(75 App. Div. 235.)

### BLISS v. UNITED TRACTION CO.

(Supreme Court, Appellate Division, Third Department. September 3, 1902.)

1. OPINION EVIDENCE.

A motorman, not shown to be an expert, and who has had but a momentary experience with a reverse current, under different and special conditions, is not competent to testify that a car going 10 miles an hour ought to be stopped immediately by use of the reverse power.

2. HARMLESS ERROR.

It being admitted that a motorman saw a boy start to run in front of his car when he was eight feet away, and the motorman's ability in the exercise of reasonable care to stop the car in time to prevent the accident being left to the jury, the admission of the opinion of one not qualified to give it, that a car, under the given conditions, could, by the use of the reverse current, be stopped instantly, may have been prejudicial.

Appeal from trial term, Rensselaer county.

Action by Emma Bliss, administratrix of Franklin Bliss, deceased, against the Union Traction Company. From a judgment for plaintiff on a verdict, and from an order denying a motion to set aside the verdict and for a new trial, made on the minutes, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

Patrick C. Dugan, for appellant.
Edmund J. Sweeney (John T. Norton, of counsel), for respondent.

CHASE, J. Franklin Bliss, a child five years and eight months old, was run upon by one of the defendant's trolley cars, and received in-

juries from which he died. This action was brought by his mother, as administratrix, and judgment has been entered upon the verdict of a jury in favor of the plaintiff against the defendant. The accident occurred on a clear day on an unobstructed street in the city of Troy. The decedent ran from a yard on the east side of a street on which the defendant has a double line of track to a point on the west side of the street, where another small boy was standing, and then at once started back, and was hit by a car running on the east track. The boy's legs were crushed, and he was pushed along the track for some distance. The plaintiff claims that the motorman in charge of the car was careless, and inattentive to his duties, and that he failed to stop the car in time to prevent the accident, although the boy was in plain sight, and the danger manifest. The motorman testified that he was running at a moderate rate of speed, with his power turned off, and that he saw the boy crossing the street, and that he stopped in the middle of the west track, and remained there until the car was within eight or nine feet of him, and then ran rapidly in front of the car. He further testified that he immediately used his brake and worked the reverse current, but that before he could stop the car the accident occurred. The court, in charging the jury, said:

"It was the motorman's duty in charge of this car, as an employé of the defendant, if he had time, to stop the car, * * * and prevent running over this child, if, by exercising reasonable diligence and care, he could do so. If you find that the motorman exercised such reasonable care and diligence, then your verdict will be for the defendant, the railroad company. If you find that the motorman did not, and that this child was injured—fatally injured thereby—through no negligence or want of care on its part or on the part of its mother, then your verdict may be for the plaintiff."

The motorman's ability, in the exercise of reasonable care, to stop the car in time to prevent the accident, was thus left to the jury as the determining factor in deciding the case. The testimony in regard to the distance in which a car under the circumstances then existing could be stopped was of the greatest importance. Plaintiff's only evidence in regard thereto consisted of the testimony of one Ronan. He had previously been employed by the defendant as a motorman for nine months. He testified: "The effect of reversing the current on the wheels of a car is, when you reverse the current, it backs it up,—starts the wheels going the other way. During my experience as a motorman I did not have occasion to use the reverse in order to stop my car." He further testified that one time, when going down quite a steep hill in Cohoes, he, by accident, put the power on when the current was reversed. His language is, "Why, I had my hands on the brakes coming down hill, and happened to turn it over a notch, and it stopped, and it went back that way." He further stated that he used the reverse lever once on a level road, but that the rails were slippery, and it would not stop at all. He further testified, "I never tried it when the rails were dry; never saw it done when the rails were dry." Omitting the objections and rulings, the record continues as follows:

"Q. Now, if you had occasion to stop your car suddenly, to avoid some obstruction or obstacle to it, and applied the brake vigorously, and the car was going at a rate of speed not to exceed ten miles an hour, within what

space between the time of the application of the brake and the time of the stopping of the car would the car stop? A. About twenty-five feet. Q. About what distance would the car cover if you used the reverse power? A. I never had occasion to use the reverse. Q. Well, do you know within what distance it would stop if you had used it? A. Only what experience I had coming down that hill. Q. If you know, I would like to have you state within what distance the car could be stopped by the use of the reverse power under the conditions of the last question. A. It ought to be stopped instantly."

The record does not disclose that the witness had special knowledge in regard to stopping a car by the use of a reverse current, enabling him to speak as an expert. A momentary incidental experience with a reverse current under special conditions is not sufficient to make one an expert, especially as to its use under entirely different circumstances. The witness was disinclined to answer as an expert, but the court, notwithstanding specific objections, allowed repeated questions; and his answer, "It ought to be stopped instantly," was clearly a guess, and a mere speculative opinion. It is quite possible that under the charge of the court, in connection with this testimony, the jury may have reasoned that, as the motorman confessedly saw the boy start to run in front of his car when he was eight or nine feet away from him, the car ought to have been stopped instantly, and that the failure to stop the car instantly was negligence on the part of the defendant. Such conclusion should not be based upon the testimony of a witness whose competency to speak as an expert had not been sufficiently shown.

It is unnecessary to discuss the merits of this case, but for the reason stated the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.